now to the United States v. Jones, Appeal 19-1644. Mr. Henderson. Good morning, and may it please the Court. My name is Peter Henderson. I represent Jerry Jones in this case. There are three procedural errors here. I'd like to focus on the third because I think it's the most fundamental. I don't intend to talk much about the First Step Act because the government waived its argument, but I'm happy to answer questions on that as well. The parsimony provision of Section 3553A reflects generally how federal sentencing law works, and that is that we take a holistic view of both the defendant and the offense conduct. As the Sentencing Commission explains in Section 5G1.2, sentencing courts are really to examine not just what the prosecutor charges, not just the mere facts that make up a count of conviction, but to look at the whole picture. We see that in the guidelines where we consider, for example, relevant conduct in Section 1B1.3, so not just what happened in the offense of conviction, but also anything else that happened in the course of conduct. We see it in the grouping rules in Chapter 3 in Section 3D1.1-1.4, where we aggregate all of the harm, all of the offense conduct, into one offense level that produces one guidelines range, and then the district court can examine all of the conduct, all of the defendant's history and characteristics. Step one of the process is to determine what's the total punishment that will be sufficient but not greater than necessary to effectuate the goals of sentencing. Step two, then, under Section 5G1.2 and under 18 United States Code Section 3584, is to conform that total sentence that is sufficient but not greater than necessary to the statutory criteria. And so what happened in this case gets that backwards, where the district court appears to have started with step two, where he's going by counts of conviction instead of starting with the guidelines range and the total sentence under Section 3553A. And that's how we arrive at the strange situation where the court is satisfied that the total sentence is 675 months. That comports with the sentences that Mr. Jones's co-defendants received, 675 and 728 months. That's the sentence. You know, court's adjourned. He's remanded to the custody of the marshals. And then the probation officer says, well, wait a second. On each individual count, you actually imposed 840 months total. And so then the court goes back and says, well, you're right. So I'm now going to find that 840 months is the appropriate sentence. That's an impossible statement if we're following sentencing law correctly, because the court should determine first what the total punishment is, and only then apportion that punishment among the various counts. That's the approach that the Supreme Court endorsed in Dean. And the Supreme Court expressly rejected an idea from the government that we should go count by count, that the court should consider each count independently and impose a sentence, and then, you know, sort of only add them up in count in step two. Instead, the approach is to figure out the whole sentence. The other two errors are significant. They warrant a remand for resentencing. The second error we point out, there's not much And what justification there is relies on inaccurate information. The court very clearly, I think, conflated one of Mr. Jones's prior convictions with the offense conduct in this case, and thought that Mr. Jones or one of his co-defendants had discharged a firearm in this case. Mr. Henderson, this is Judge Saini. What evidence is there that the court relied on that misstatement of the facts, namely that he had fired a gun in the victim's home during a break-in after the robbery? That is clearly an inaccurate statement of the facts, but what's in the record reflecting that the district court relied on that in imposing the sentence? So, on page 65 of the transcript, the court is evaluating, saying the typical 3553A considerations, I need to evaluate the history and characteristics of the defendant and the nature and circumstances of the offense. And he goes over the nature and circumstance of the offense and makes this inaccurate statement. He doesn't say much else about the offense, and then says, right after the inaccurate statement, so just horrific crimes of violence and threatening individuals. That comes precisely after he's just misapprehended what actually happened. And so, that's his examination of the nature and circumstances of the offense. He then doesn't say anything more about the offense and proceeds to talk about Mr. Jones' history and characteristics, and then goes through the other 3553A factors. But I think that it's clear that the 70-year sentence here was informed, if not primarily, then substantially on the basis of how the district court perceived this offense. Certainly, the criminal history had something to do with it, but that seems to be how the district court looked at this sentence, was that this is a really horrific crime of violence, and it needs to be punished by the maximum sentence. I think that the Corona-Gonzalez case sort of squares with this a bit in terms of examining, under plain error review, what would constitute reliance on inaccurate information. And there, the judge had thought that there was a prior removal from the country and talked about it, and that was the basis under plain error review to reverse. And here, we've got the same thing, where the judge just misapprehends what actually happened, how serious the offense was. Mr. Henderson, this is Judge Flom. The district court acknowledged the need to avoid unwarranted sentencing. So, my question to you is, the court didn't explain why Jones was not similarly punished, right? Right, right. And he didn't differentiate their roles in the offense or their criminal history or the guideline range. So, if we send that back and he addresses those areas, what is your answer to if he comes up with the same sentence? Well, that's exactly it. We haven't made a substantive unreasonableness challenge here. We're not saying the judge is forbidden in all circumstances from arriving at the sentence. But on this record, there's just no explanation. I think that your point about the co-defendants is an important one because he seemed to have imposed the sentence thinking it was just in line with the other co-defendants. Again, step one of the process is thinking of the total sentence. The judge thought it was 675 months and thought under, you know, to avoid unwarranted sentencing disparities, that would be a perfectly fine sentence. So, you know, what the Supreme Court has said more recently is when you have these types of procedural errors, a resentencing hearing is a brief event. It doesn't impose, you know, a number of costs. If the court were to again find that this is an 840-month sentence, that that's the appropriate sentence and actually provide some of the justifications that we've talked about in our brief that we're lacking, you know, comparing to the co-defendants, justifying why 37 years above the guidelines range is appropriate in this case, why the guidelines don't get it correct, then, you know, it may be affirmed in the next appeal. But I suppose we have these sentencing procedures to make sure that the district court is going through these sentences correctly. And I think that if the district court were to do that, then it may arrive at a different result. All right, Mr. Henderson, you're down to 45 seconds, so you want to save a little time? I'll save those. Yes, thank you. Thank you, Mr. Henderson. Mr. Reich? You may please record Brian Reitz for the United States. I would like to take those somewhat in reverse order, starting with Judge Flom, your question. The district court did say, and I'm quoting this as a sentence transcript, page 67, that Jones' co-defendants had similar records and similar conduct. As far as going into that a little bit more, the court did in the inner workings in the criminal conduct. So we think that the district court did, in fact, make a comparison to the co-defendants. And like the first time they were sentenced, came out with the same sentence. Second, moving on to the inaccurate statement, Judge St. Eve, I think you are correct that there's really no evidence that the district court relied on this one statement. I think the comparison between Miller and Spivey, the cases cited in this case, are helpful. In Spivey, the district court mentioned an incorrect statement one time, whereas in Miller, the district court mentioned an incorrect statement each time the judge restated the facts of the defendant's criminal conduct. Where here, we have one statement that followed the long recitation of defendant's criminal conduct, which was accurate, then the recitation of the defendant's criminal history, which was accurate. And this one paragraph did sort of conflate the two, but that was the only reference to this. So I don't think that's a scenario that rises to plain error, especially when you think about what the conclusion was. I mean, Mr. Jones points to that statement must have influenced the court's reasoning that these were horrific crimes and Jones threatened individuals, but of course, that is in fact true with or without the inaccurate statements. That's right. This is Judge St. Eve. But given the statements of the court, and he's talking about the victims and the great fear they were placed in and the fact that they were threatened, and then he goes into the statement that's not accurate and concludes these are just horrific crimes of violence and threatening individuals. So looking at the record, how can we conclude that his belief at the time that he had threatened one of the family members with a gun, a shotgun, after the robbery, how can we draw a conclusion that he wasn't persuaded by that inaccurate statement? Well, I would like to address both those two inaccurate statements. The shotgun, I think Mr. Jones agrees is somewhat something of a distinction without a difference. There was a gun. I think the primary inaccuracy that your honor pointed out was that Mr. Jones didn't threaten the victims in that way. But Mr. Jones did threaten the victims. Mr. Jones threatened to shoot Mr. Routt if Mrs. Routt called the police after they left. So the statement that Mr. Jones threatened the victims is actually true. Now some of the brain work that went into that. He goes on to say fired the firearms in the house during that break in after the robbery. That's the statement that is not accurate. Yes, that is not accurate, your honor. We haven't disputed otherwise. But I think when especially in plain air, when you look at this court's precedent, there has to be something more than just stating something that was wrong. There has to be some reliance. And it's hard to say there is reliance from one statement, which doesn't really undo any of the broader findings of the district court made. This was with or without those. It was horrific. And Mr. Jones did threaten individuals. And I do want to step back because I think Mr. Jones's argument on this somewhat ignores what the district court actually did. I mean, the district court, the primary focuses for the judge were one protecting the public to Jones's post sentencing conduct, which included conviction for murder and three avoidance of disparities between Mr. Jones's co-defendants. And the statements don't the inaccurate statements don't impact any of those three factors. So in that context, I don't think this rises to plain error on this front. What impact should it have on us that he makes this inaccurate factual statement and then goes on to sentence Mr. Jones substantially above the guideline range? Should that factor into our analysis? I don't think so, your honor. The inaccurate statement and its import on the sentence should stand alone under this court's precedence. And I don't think Spivey or Miller or any of the cases in this line really identify the length of the sentence as an important factor. Especially in this context, when the judge was pretty, I think, pretty clear about the three reasons why Mr. Jones was sentenced above guidelines, and it really wasn't that. With that said, I'd like to turn to. Well, that's not exactly accurate, though, because he did say the impact on the victims was a determining factor in going so high above the guidelines. So I think we can take that, and it's certainly accurate, but the victims testified at I don't think anybody questions that the impact on the victims was severe. They're still troubled by it 20 plus years later, so that inaccuracy doesn't really, in any meaningful way, impact the victim's suffering. I mean, yes, as we said in our briefing, the incident would have been worse if those things occurred, but it did still significantly severely impact the victims to the point that the victims testified at the which, say, the practical matter, sometimes difficult to get victims to testify at the initial sentencing hearing, much less 120 years later. I think that underscores how big of an impact it had on them. So the district court was correct that it did have a severe impact on the victims. If there are no further questions about that, I do want to, I'm not sure how much time I have left, but I want to move on to the parsimony principle. Here, I guess I would start by saying that to whatever extent our brief implies otherwise, we agree that the aggregate sentence is the primary import. I mean, the guidelines are set for the aggregate sentence, but the district court went in knowing or thinking that the final number should be the maximum sentence. I don't think there's any dispute about that. The district court judge says that a couple times that he calculated the individual sentences on the individual counts, and it's true that he made a math mistake, but I don't think that that math mistake can rise to a parsimony principle violation. Otherwise, as we pointed out, that anytime a district court judge makes a mistake, in addition, he would, he or she would then be stuck with having to divert to or default to the parsimony principle. Um, and if there are no further questions, the government would be happy to rest on its brief. All right. Thank you, Your Honor. Mr. Henderson. Sure. I'll just start. I think it's incredible to think that the district judge did not consider that the seriousness of the offense as a primary reason to impose a 70 year sentence, but I think the government sort of gets the game away and saying that the court did focus on the need to avoid disparities among the co-defendants because the court thought it was avoiding a disparity by imposing a 675 month sentence. Um, and then of course it, it, uh, amended that sentence. Um, final thought, the district court under the parsimony provision, um, should not come into a sentencing thinking I'm just going to impose the maximum sentence, but the maximum sentence in this case actually is life. Um, the section nine 24 C counts. Um, and so instead the district court went count by count. Um, and, uh, it, it should start with the total sentence rather than go count by count. Thank you. All right. Thank you, Mr. Henderson. It's all right. We'll, uh, take, thank you. Take this case under advisement and the court will stand in reasons.